ACCEPTED
03-14-00535-CV
4610939
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/23/2015 7:17:44 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00535-CV

In the Third Court of Appeals

Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

3/23/2015 7:17:44 PM

JEFFREY D. KYLE
Clerk

**DAVID YOUNG,** *APPELLANT*

*v.*

**TRAILS END HOMEOWNERS ASSOCIATION, INC.; TLS PROPERTIES, LTD.; TLS OPERATING COMPANY, LLC.; VAN KEENE; AND RICK DURAPAU**, *APPELLEES*

APPEAL FROM CAUSE NO. D-1-GN-10-003864
200TH DISTRICT COURT OF TRAVIS COUNTY, TEXAS
HON. SCOTT H. JENKINS PRESIDING

## APPELLANT'S BRIEF

Stephen Casey
Texas Bar No. 24065015

CASEY LAW OFFICE, P.C.
595 Round Rock West Drive
Suite 102
Round Rock, Texas 78681
Telephone: 512-257-1324
Fax: 512-853-4098
stephen@caseylawoffice.us

*Counsel for Appellant*
*David Young*

**ORAL
ARGUMENT
REQUESTED**

i

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant believes this Court can reverse and remand this case based on the record. Should the Court desire oral argument, Appellant is ready to participate.

# IDENTIFICATION OF PARTIES AND COUNSEL

*Appellant*

T. David Young
(*Pro se at trial*)

*Appellate Counsel for Appellant*

Stephen Casey
CASEY LAW OFFICE, P.C.
595 Round Rock West Drive
Suite 102
Round Rock, Texas 78681
Phone: 512-257-1324

*Appellees*

Trails End Homeowner's Association,
Inc., and Van Keene

*Trial and Appellate Counsel for Appellees*

Christopher R. Mugica
JACKSON WALKER LLP
1000 Congress Avenue, Suite 1100
Austin, TX 78701-4042
Phone: 512-236-2000

Jeff Tippens
SCANLAN, BUCKLEY & YOUNG
602 West 11th Street
Austin, TX 78701
Phone: 512-478-4651

TLS Properties, Ltd., and TLS
Operating Company, LLC.

Jonathan Quick
720 Brazos St., Ste. 700
Austin, TX 78701-2974
Phone: 512-499-3644

Rick Durapau
11907 Misty Brook Drive
Austin, TX 78727
Phone: 512-346-4359

*Pro se*

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES**..................................................................................... 1

**ISSUES PRESENTED** ........................................................................................ 3

    **1. Texas re-platting statutes in place in 1962 statutorily bars re-plat of land if a lot has been sold unless the subsequent lot owners approve. Here, without any re-plat showing approval of Appellant's predecessor's-in-interest, should the trial court's judgment be reversed for legal insufficiency?** ........................... 3

    **2. Because one cannot sell what one does not own –** *nemo dat quod no habet***, the 1962 re-plat of the disputed property, as well as any successors-in-interest, transferred nothing. Should the trial court's judgment be reversed for legal insufficiency?** ......................................................................................... 3

    **3. The trial evidence by both parties did not show actual and visible possession as an element of adverse possession. Should the trial judgment be reversed for both legal and factual insufficiency?** .................................................................................. 4

    **4. The trial court made multiple erroneous findings of fact and conclusions of law (1) without any evidence in the record to support the conclusion, or (2) based on legally incompetent evidence. Should those be set aside due to legal or factual insufficiency?** ....................................................................................... 4

**STATEMENT OF FACTS**.................................................................................... 4

    The Original Subdivision by the Rittenhouses and Reed:................................... 4

    T.L. Smith conveys a lot within TES "to the center of Big Sandy Creek" as platted in 1947:.................................................................................... 5

T.L. Smith erroneously re-plats land around Lot 52 and "re-" conveys that land without the signature of Lot 52's owner, subdividing land over existing Lot 52, without putting Lot 52 on the new plat: ..................................... 5

Young purchases Lot 52 from the Trundle line (based on the 1947 plat) in 1996: ................................................................................................................... 6

The TLS Defendants receive deeds in 1997, one year after Young purchased his land. .................................................................................................. 7

Several HOA members came together to defend their properties against a common opponent on claims of adverse possession. ........................................ 7

The HOA Defendant leased the property in 2004, with a purchase option, exercised in 2008. ..................................................................................... 8

Defendant's expert, Herman Crichton, and Plaintiff too, testified that the lot lines of Lot 52, if extended, conflict with Lot 140 per the 1962 re-plat. .................................................................................................................... 9

Young testified as to his ownership, his chain of title, his objection to use of the land, and his blockage of travel across his land. ......................................... 9

**SUMMARY OF THE ARGUMENT** ................................................................ 11

The parties' common predecessor-in-interest, T.L. Smith, attempted to sell the same property twice. The second sale should be found *void ab initio*. .................................................................................................................. 11

-The 1947 plat expressly defined Appellant's lot 52. ...................................... 11

-Absent actual and visible possession, no adverse possession claim can issue. ........................................................................................................... 12

-The trial court's findings of fact identify issues that never appear with the entire record. ........................................................................................ 13

-The trial court made erroneous conclusions of law without legal or factual sufficiency. ....................................................................................... 13

**STANDARD OF REVIEW** .................................................................. 13

    Legal Sufficiency Review ................................................................. 13

    Factual Sufficiency Review .............................................................. 14

**ARGUMENT** .................................................................................. 15

1.    The trial court was barred as a matter of law from recognizing the botched 1962 re-plat for multiple independent reasons. It is void. .......... 15

    a.    The re-platting laws for a statutory bar from accepting the 1962 botched re-plat as valid sans notice to the Trundle chain of owners. ................................................................. 15

    b.    The chain of deeds, exemplified by the Smith/Trundle conveyance, unambiguously conveys the land between the sideline extension of Lot 52 "to the center of Big Sandy Creek"; thus, no court may rewrite those deeds as they are construed against Smith, the grantor, and his successors. ............... 17

    c.    Young prevails because even if the deed were ambiguous, it is construed against Smith, the grantor, and it does not reserve the water, which must be made by express reservation. ................................................................. 19

2.    No defendant satisfied the elements of adverse possession; thus, as a matter of legal and factualy sufficiency the judgment should be reversed. ...................................................................... 20

    a.    No evidence supported adverse possession by the TLS Defendants ............................................................... 21

    b.    No evidence supported adverse possession by the HOA Defendants ............................................................... 22

3.    The trial court's Findings of Fact are legally insufficient as the evidence from the trial, while sparse, is conclusive regarding the validity of Young's claims to title. ............................................. 23

a.   Young offered conclusive evidence of his ownership to the middle of Big Sandy Creek, regardless of all the post-hoc conjecture about T.L. Smith's intentions, which contradict the Findings of Fact. ...................................................................... 23

b.   The trial court's conclusions of law have no support in the facts, nor are they proper legal conclusions given the questions of law posed to the court; this Court should reverse the decision of the trial court. ......................................................... 27

**CONCLUSION** ............................................................................................. 29

**CERTIFICATE OF COMPLIANCE** ............................................................... 29

**CERTIFICATE OF SERVICE** ...................................................................... 30

# INDEX OF AUTHORITIES

## Cases

*Bywaters v. Gannon*

       686 S.W.2d 593 (Tex. 1985)......................................................................... 20

*Cain v. Bain*

       709 S.W.2d 175, 176 (Tex. 1986)................................................................ 13

*Cherokee Water Co. v. Freeman*

       33 S.W.3d 349 (Tex. 2000)........................................................................... 16

*City of Keller v. Wilson*

       68 S.W.3d 802 (Tex. 2005)................................................................... 12, 22

*Coastal Indus. Water Auth. v. York*

       532 S.W.2d 949 (Tex. 1976)......................................................................... 19

*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*

       136 S.W.3d 227 (Tex. 2004)................................................................. 14, 20

*Herbert v. Herbert*

       754 S.W.2d 141 (Tex. 1988)......................................................................... 13

*Hotchkiss v. Nat'l City Bank*

       200 F. 287 (S.D.N.Y. 1911)........................................................................ 22

*Kothe v. Harris County Flood Control Dist.*,

       306 S.W.2d 390 (Tex. Civ. App.—Houston [1st Dist.] 1957, no writ)........ 16

*Lazarides v. Farris*

367 S.W.3d 788 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ............... 3

*Luckel v. White*

819 S.W.2d 459 (Tex. 1991).................................................................. 16

*Office of Pub. Util. Counsel v. Public Util. Comm'n.*

878 S.W.2d 598 (Tex. 1994)............................................................. 3, 6, 7

*Plainsman Trading Co. v. Crews*

898 S.W.2d 786 (Tex. 1995)................................................................. 15

*Ulbricht v. Friedsam*

325 S.W.2d 669 (Tex. 1959)............................................................. 16, 18

## Statutes

Acts 1975, 64th Leg., ch. 482 (H.B. 305), § 1 .......................................... 14

Tex. Civ. Prac. & Rem. Code § 16................................................... 19, 21

Tex. Rev. Civ. Stat. Ann. art. 974a, § 5 ............................................. 14

## Rules

TEX. R. EVID. 201 ................................................................... 3, 6, 7

## Law Review Articles

W. Wendell Hall

*Standards of Review in Texas*, 38 St. Mary's L.J. 47 (2006)............................. 12

## Movies

*Back to the Future*, Universal Pictures (1985) ............................................................ 18

## STATEMENT OF THE CASE

*Nature of the Case:*      This suit involves divergent claims over real property, and ancillary causes of action stemming from the disputed property. CR.5-11.

*Course of Proceedings:*      The lower court granted a trial motion to exclude *pro se* Appellant's expert witness, and then conducted a bench trial on the merits of the case. The trial court awarded judgment to Appellees' on their counterclaims, CR.91-109, issuing Findings of Fact and Conclusions of Law ("FOF/COL"). CR.181-93. Appellant moved for amendments to the FOF/COL. CR.194-205. The trial court denied the motion. CR.206-07.

*Trial Court's Disposition:*      The district court signed a final order on May 30, 2014. CR.91-109. Appellant timely filed a motion for new trial. CR.112-180, and a notice of appeal. CR.208.

## ISSUES PRESENTED

1. **Texas re-platting statutes in place in 1962 statutorily bars re-plat of land if a lot has been sold unless the subsequent lot owners approve. Here, without any re-plat showing approval of Appellant's predecessor's-in-interest, should the trial court's judgment be reversed for legal insufficiency?**

2. **Because one cannot sell what one does not own − *nemo dat quod no habet*, the 1962 re-plat of the disputed property, as well as any**

3

**successors-in-interest, transferred nothing. Should the trial court's judgment be reversed for legal insufficiency?**

3. **The trial evidence by both parties did not show actual and visible possession as an element of adverse possession. Should the trial judgment be reversed for both legal and factual insufficiency?**

4. **The trial court made multiple erroneous findings of fact and conclusions of law (1) without any evidence in the record to support the conclusion, or (2) based on legally incompetent evidence. Should those be set aside due to legal or factual insufficiency?**

## STATEMENT OF FACTS

### The Original Subdivision by the Rittenhouses and Reed:

In 1947, O.A. Rittenhouse, his wife Carrie, and their mortgagee, D.C. Reed, submitted and received approval to subdivide a parcel of land, hereinafter known as Trails End Subdivision ("TES"). *See* 2RR.29, ll. 7-15; PX 2. The subdivision was recorded in Book 4 of the Travis County property records, Page 331.

The plat conspicuously depicts multiple lots starting along both East Darlene and West Darlene Drive, the latter street affecting this case. PX 2. Lot numbers peak on West Darlene at Lot 56 and run down through Appellant's lot, Lot 52, to a low of Lot 40 on West Darlene Drive. PX 2.

4

Each lot on West Darlene Drive derives its western edge along Lake Travis. PX 2. This scheme is consistent with the lots at that time, judicial notice of which is hereby requested.[1]

## T.L. Smith conveys a lot within TES "to the center of Big Sandy Creek" as platted in 1947:

By 1955, T.L. Smith owned lot 52, as platted in the 1947 plat in record in Travis County, and conveyed that deed to Sylvia Trundle. 2 RR 20-24; PX 4. The conveyance is recorded in Book 6068, Page 1948 of the Travis County Property Records. The wording of the deed expressly states that the property conveyed includes not just Lot 52, but the rest of the land between an extension of the sidelines of Lot 52 to the center of Big Sandy Creek:

> Lot No. 52, in "Trail's End", Lake Travis Subdivision in Travis County, Texas, according to a map or plat of same of record in Plat Book No. 4, page 331, Plat Records of travis County, Texas, together with that parcel of land included between the extension of side lines of said lot to the center line of Big Sandy Creek.

PX 4.

## T.L. Smith erroneously re-plats land around Lot 52 and "re-" conveys that land without the signature of Lot 52's owner, subdividing land over existing Lot 52, without putting Lot 52 on the new plat:

---

[1] *See* TEX. R. EVID. 201(b),(c),(f); *see, e.g.*, *Office of Pub. Util. Counsel v. Public Util. Comm'n.*, 878 S.W.2d 598, 600 (Tex. 1994) (appellate court has power to take judicial notice for first time on appeal); *Lazarides v. Farris*, 367 S.W.3d 788, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (taking judicial notice of matters of public record sua sponte for first time on appeal).

Despite the 1947 Rittenhouse plat, in 1962, T.L. Smith submitted a re-plat to Travis County Commissioner's Court. RR2,3 *passim*; DX 6. The new plat contained a new road, West Darlene Extension, and new subdivisions. DX 6. The new plat is limited in scope. Uniquely, the southernmost property described on the new plat is Lot 57, which as compared to the 1947 plat, borders Lot 56 directly to the north and does not touch Lot 52. DX 6.

The new plat also, geographically, includes lots that appear directly to the west and south of Lot 55. DX 6. Again, Lot 52 does not appear on the new plat. DX 6. No signatures or approval from Trundle or any other owner of Lot 52 exists in the record evidence.

**Young purchases Lot 52 from the Trundle line (based on the 1947 plat) in 1996:**

Without objection or challenge, Young testified that he purchased Lot 52 in 1996. Without objection or challenge, Young testified that he tried with varying levels of success to block access to his property, that land being Lot 52 through to the center of Big Sandy Creek. 2RR.113 ln.9 - 2RR.115 ln.2. Young testified that neither Appellees nor any other party had ever been able to use the property in question. 2RR.15 ll.7-24. It is covered in "briars." 2RR.15 ln. 13.

This testimony was corroborated by Appellees' local fact witness, June Roberts, who testified that for "three, four years" there had been no access to Lots 139 or 140, situated north and west of Young's Lot 52. 2RR.236 ll.3-17. ***This is the only testimony of use*** regarding that property in the record.

6

**The TLS Defendants receive deeds in 1997, one year after Young purchased his land.**

In 1997, the TLS Properties, Ltd. ("TLSPL"), and TLS Operating Company, LLC ("TLSOC") (collectively, the "TLS Defendants") obtained Special Warranty Deeds from three heirs of the Smith family to Lots 139 and 140.[2] DX 11. That same day, TLSOC deeded its 1% stake in Lots 139 and 140 to TLSPL. DX 12. None of the deeds in question warrant the title as clear. DX 11, 12.

Bruce Smith, the TLS Defendants' representative, testified about the origin of the properties, and that at times all of the disputed properties were subject to being underwater. 2RR.216 ln. 5 - 2RR.217 ln. 2. Smith testified that he would consider "Big Sandy Creek" to be synonymous with "Big Sandy Arm" or "gully." 2RR.220-222. Smith also testified that he did not know the "gully" boundaries with respect to the property lines of Lot 52. 2RR.226 ll. 18-21.

**Several HOA members came together to defend their properties against a common opponent on claims of adverse possession.**

Both Plaintiff's witness James Griffith and Defendants' witness June Roberts identified that the HOA had been in a prior lawsuit, one both defending a claim of adverse possession and judicially asserting that the property lines in that part of TES went from West Darlene Drive to the center of Big Sandy Creek (Lake

---

[2] The deeds gave a 99% interest to TLS Properties, Ltd., and a 1% interest TLS Operating Company, LLC.

[3] *See* TEX. R. EVID. 201(b),(c),(f); *See, e.g., Office of Pub. Util. Counsel v. Public Util. Comm'n.*, 878 S.W.2d 598, 600 (Tex. 1994) (appellate court has power to take judicial notice for first time on

7

Travis). 2RR.81 ln. 17 - 2RR.82 ln. 2; 3RR.94 ln. 25 – 3RR.96 ln. 16. PX 2. Judicial notice is requested at this time regarding the claims and legal positions asserted in those suits.[3]

**The HOA Defendant leased the property in 2004, with a purchase option, exercised in 2008.**

June Roberts, the TES HOA Defendant representative ("HOA" or "HOA Defendant"), testified that the HOA purchased Lots 139 and 140 from TLSPL in November 2008. The suit began in 2010, a fact to which this Court is asked to take judicial notice as part of the record.[4] Roberts testified that at no time had the HOA been able to use the land. 2RR.231 ll. 16-20. Roberts further testified that access to Young's property had been blocked for "three, four years," a time which predates the HOA purchase and extends back into the TLSPL ownership. 2RR.236 ll. 3-7; 3RR.34 ll. 35-35.

Roberts admitted that Young publicly opposed use of his land and defended his claim to the land, agreeing that Young "brought a surveyor and an engineer with [himself] and other people to try to substantiate that [the HOA's attempt to

---

[3] *See* TEX. R. EVID. 201(b),(c),(f); *See, e.g.*, *Office of Pub. Util. Counsel v. Public Util. Comm'n.*, 878 S.W.2d 598, 600 (Tex. 1994) (appellate court has power to take judicial notice for first time on appeal). The cause number, in which the HOA was a defendant, is in Travis County, D-1-GN-01-004002, *Sandy Creek Investors, Ltd., et al., v. Sharon Thompson, et al.*

[4] *See* TEX. R. EVID. 201(b),(c),(f); *see, e.g.*, *Office of Pub. Util. Counsel v. Public Util. Comm'n.*, 878 S.W.2d 598, 600 (Tex. 1994) (appellate court has power to take judicial notice for first time on appeal).

use his land] [was] not right and we need to not do this." 3 RR.22 ll 6-14. Roberts admitted that Young had blocked access to his lot. 3RR.34 ll. 35-35.

**Defendant's expert, Herman Crichton, and Plaintiff too, testified that the lot lines of Lot 52, if extended, conflict with Lot 140 per the 1962 re-plat.**

Herman Crichton surveyed the disputed area, and produced a map, DX 21, that shows how Lot 140 cuts across Lot 52. DX 21. To do so, Crichton had to assume that the deed chain from Smith to Young does not truly extend the sidelines of Lot 52 to the "center of Big Sandy Creek." 2RR.152 ln. 22 - 2RR.153 ln. 5. Crichton references a "pin 13" in finding the supposed northwest corner of Lot 52, but at no point on any plat or prior survey is pin 13 identified. *Id.*

**Young testified as to his ownership, his chain of title, his objection to use of the land, and his blockage of travel across his land.**

Young appeared *pro se*, and despite difficulty, provided the necessary evidence to refute Defendants' counterclaims and to establish his claims. He testified:

- He went to the HOA to ask them not to buy land that was already his. 2RR.87 ll. 5-8; 2RR.87 ll. 17-21.
- He told the HOA that one cannot deed the same piece of property twice. 2RR.87 ll. 17-21.

- His chain of title (testified over objection) arose from the 1955 conveyance and encompassed land from the extension of the sidelines of his lot "to the center of Sandy Creek." 2RR.89 ll. 2-18.

- The HOA had taken a legally inconsistent position and was subject to judicial estoppel from claiming that his lot lines did not go to the center of Big Sandy Creek. 2RR.93 ll. 12-17. This was admitted as a statement by a party opponent. *Id.*; PX 3.

- Lot 52 sideline extensions (used by Crichton in his survey) clearly show Lot 140 conflicts with the deed of Lot 52, and should demonstrate his prior title to the center of Sandy Creek. 2RR.103 ll. 4-7.

- Lot 139 was an illegal plat. 2RR.105. ll. 23-24.

- The 1.477 acres encroaches onto Lot 52. 2RR. 107 ll. 7-9.

- The pavement on West Darlene Extension was moved from the northern position until the edge of his land. 2RR.110 ll. 9-10.

- He blocked access to his property. 2RR.113 ln. 9 - 2RR.114 ln. 22.

- TES HOA has never used Lot 139 as it was covered with briars. 2RR.115 ll. 7-24.

- The Extension on the 1962 plat (over objection) looks nothing like the current extension of the road on the property. 2RR.116 ln. 12 - 2RR.118 ln. 5.

## SUMMARY OF THE ARGUMENT

**The parties' common predecessor-in-interest, T.L. Smith, attempted to sell the same property twice. The second sale should be found *void ab initio*.**

### *-The 1947 plat expressly defined Appellant's lot 52.*

The 1947 is legally unambiguous. Given the name of the body of water, Big Sandy Creek, and its appearance on the 1947 plat is definitive. Lot 52 includes land between its sidelines "to the center line of Big Sandy Creek." Redefining Lot 52:

∅ Rewrites the 1947 plat to include the end of lot 52 instead of the unambiguous language of the deed that extends the land to the "center of Big Sandy Creek";

∅ Ignores this conveyance and the rights that proceeded to it from the Trundle line of conveyances;

∅ Ignores the legal rule of construing deeds against the grantor, Smith;

∅ Permits the 1962 botched re-plat to convey the same land twice, a legally void act for two reasons:

   o No one can give what he does not own—*nemo dat quod no habet*, a centuries-old legal canon;

   o Neither Trundle nor her successors-in-interest signed off on the 1962 plat.

11

∅ No notice to Trundle or her successors-in-interest is proper because Lot 52 was neither mapped nor referenced on the 1962 re-plat.

### *-Absent actual and visible possession, no adverse possession claim can issue.*

Adverse possession under any of the limitations periods in Texas Civil Practices & Remedies Code § 16 has not been met by any legally sufficient or factually standard. No party with personal knowledge testified as essential elements of any of the periods.

- 25-year period. No party with personal knowledge testified as to peaceable and adverse possession (visible and actual possession) by another who cultivates, uses, or enjoys the property; this was Appellees' burden to prove and they offered zero evidence.

- 10-year period. No party with personal knowledge testified as to peaceable and adverse possession (visible and actual possession) by another who cultivates, uses, or enjoys the property;

- 5-year period. No party with personal knowledge testified as to peaceable and adverse possession (visible and actual possession) by another who:

  o cultivates, uses, or enjoys the property;

  o pays applicable taxes on the property;  and

  o claims the property under a duly registered deed.

12

- 3-year period. No party with personal knowledge testified as to peaceable and adverse possession (visible and actual possession) under title or color of title because of the intrinsic unfairness to Trundle and her successors-in-interest.

### *-The trial court's findings of fact identify issues that never appear with the entire record.*

The trial court made sweeping findings of fact that do not appear in the record. In no less than sixteen (16) instances, the trial court made findings unsupported by any facts in the record.

### *-The trial court made erroneous conclusions of law without legal or factual sufficiency.*

The trial court's conclusions of law suffer similar problems. Seven (7) separate conclusions of law have no support under either legal sufficiency or factual sufficiency standards.

## STANDARD OF REVIEW

Two standards govern this Court's evaluation of the judgment and the FOF/COL reached by the trier of fact.

### *-Legal Sufficiency Review*

The test for legal sufficiency is "[w]hether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*

*v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The reviewing court considers the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *Id.* at 807. A challenge to the legal sufficiency of the evidence may only be sustained when (1) the record discloses a complete absence of evidence to support a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810; W. Wendell Hall, *Standards of Review in Texas*, 38 St. Mary's L.J. 47, 234-35 (2006).

### -*Factual Sufficiency Review*

When reviewing a finding for factual sufficiency, the appellate court considers all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The reviewing court will set aside the findings only if the appellant has demonstrated that the evidence is so weak or the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* Because the fact-finder is the sole judge of the witnesses' credibility and the weight to be given their testimony, an appellate court may not substitute its opinion merely because it might have resolved the facts differently. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988).

14

# ARGUMENT

The evidence below was legally and factually insufficient to support the final judgment by the trier of fact. First, the trial court was barred by as a matter of law from finding ownership of any portion of Lot 52 that diverged from the 1947 plat because no evidence in the record demonstrated joined approval in the re-plat by Sylvia Trundle or any of her successors-in-interest. Second, the deed, as a matter of law, is unambiguous and cannot be "reinterpreted" by a later court. Third, any later evulsion that is anachronistic in nature and wholly not probative of the 1947 plat, which shows what could be the gully (based on both the Crichtons and Steger/Bizzell surveys) and clearly depicts Young's land extending past that boundary. No defendant satisfied the elements of adverse possession because no one testified as to actual and visible possession. Lastly, the trial court made numerous errors in its Findings of Fact and Conclusions of Law. The issues will be examined in that order.

1. **The trial court was barred as a matter of law from recognizing the botched 1962 re-plat for multiple independent reasons. It is void.**

    a. *The re-platting laws for a statutory bar from accepting the 1962 botched re-plat as valid* **sans** *notice to the Trundle chain of owners.*

Prior to 1949, re-plats in Texas were prohibited from recordation by estoppel if, i.a., estoppel created by sale of lots to persons relying on such plats. *See*

15

TEX. REV. CIV. STAT. ANN. art. 974a, § 5, as amended by 1949 Tex. Sess. Law Serv. 51st Leg. Thus, re-plats, as a matter of statutory law, may not be authorized unless permission is obtained from all affected land-owners.

At the time of the re-plat, the law did not provide (and still does not provide) for a re-plat where one of the lots has been sold to a new party and that new party has not joined in the re-plat. The statute was not changed until 1975. *See* Acts 1975, 64th Leg., ch. 482 (H.B. 305), § 1, effective 1, 1975. And even if admitted without objection, legally incompetent evidence may not support a judgment. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 n. 1 (Tex. 2004).

Here, as shown on PX 2, the original 1947 plat, includes multiple properties. First, No lot 57 exists on PX 2. Second, DX 6, the botched 1962 re-plat, purports to be out of Lot 57. *See* DX 6 (top of language over map, 1st sentence). This can't be. Second, no signature or permission is evident from DX 6 that Sylvia Trundle agreed to the re-plat. Trundle's ownership preceded DX 6. *See* PX 4. Thus, DX 6, the 1962 plat, is void as a matter of law. It is legally incompetent to support the judgment.

Further, when a person has no title to give, none can be received. This legal principle, known in Latin as *nemo dat quod non habet* (no one can give what he does not have), shows that when T.L. Smith attempted to re-plat land already sold and

conveyed to Sylvia Trundle, he lost all title to the lands conveyed and could not re-convey any land already conveyed in the 1952 deed.

The Defendants' claim and chain of title to land already conveyed in 1955 (Lot 52 and the extension of its sidelines through to the "center of Big Sandy Creek,") is void.

> **b.** **The chain of deeds, exemplified by the Smith/Trundle conveyance, unambiguously conveys the land between the sideline extension of Lot 52 "to the center of Big Sandy Creek"; thus, no court may rewrite those deeds as they are construed against Smith, the grantor, and his successors.**

Well-settled property law within the State of Texas requires deeds to be construed as a whole. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995). The deed's four corners are the bounds of interpretation. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). Review is *de novo*. *Id.* "Each clause or paragraph must be construed with reference to every other paragraph," not in isolation or separate hearings. *Kothe v. Harris County Flood Control Dist.*, 306 S.W.2d 390, 393 (Tex. Civ. App.—Houston [1st Dist.] 1957, no writ).

"It is elementary that unless the deed be ambiguous, it is the duty of all courts to construe the deed within its four corners." *Ulbricht v. Friedsam*, 325 S.W.2d 669, 673 (Tex. 1959). Further, courts "are required to give effect to all words used in the instrument, and [] are not permitted to assume that the drafter of the instrument intended for some of the words to have no effect. The language will be

17

construed strictly against the party who drafted the deed because the drafter is responsible for the language used." *Cherokee Water Co. v. Freeman*, 33 S.W.3d 349, 354 (Tex. 2000) "[A] reviewing court [is] not called on to determine what the grantors meant to say, but the meaning of what they did say." *Id.*

In the instances of land conveyances abutting bodies of water, "the presumption that the grantor intends to convey all the land he owns under the water is very strong and expressions substantially to the effect that nothing short of an express reservation of the bed will overcome the force of the presumption are not uncommon in the cases." *Ulbricht*, 325 S.W.2d at 673.

Here, the subject property deeds to the Trundle-Scot-Young chain of title are unambiguous. Judicial notice of that chain is hereby requested.[5] The deeds unquestionably grant the grantee ownership of Lot 52 as defined in Book 4, Page 331, "together with that parcel of land between the extension of the side lines of said lot to the center of Big Sandy Creek." At no point do the deeds ever reference the botched 1962 re-plat. It cannot stand, as a matter of law, that the deeds conveyed any less than that land all the way to the center of Big Sandy Creek. Further, as Big Sandy Creek abutted the land and was owned by Smith, absent an

---

[5] The Young deed, which is separate from the Trundle deed, can be publicly found in the Travis County Deed Records. Smith to Trundle (PX 4); Trundle (who had become married to "Gregory") to Scott (Instrument No. 5209709); and Scott to Young (Instrument No. 2006238983 (correction deed), 5753296 (original deed)).

18

express reservation in the deed (for which there is no record evidence), the deed conveyed all the land that it unambiguously and expressly did convey.

Defendants' witness Crichton attempts to insert ambiguity into the language of the deeds based on an assumption that T.L. Smith didn't intend to convey what is expressly conveyed within the Young chain of deeds. 2RR.152 ln. 22 - 2RR.153 ln. 5 (suggesting T.L. Smith only intended to convey to a "gully."). The four corners of the deeds rule rejects this 67-year-old anachronism. The deeds in Young's chain of title are clear. *See Ulbricht*, 325 S.W.2d at 669 (when the deed on its face is unambiguous, interpretation is limited to its four corners).

> **c.**      ***Young prevails because even if the deed were ambiguous, it is construed against Smith, the grantor, and it does not reserve the water, which must be made by express reservation.***

In addition, T.L. Smith's 1962 chain from the botched re-plat, the grantor of the Defendants' chain, suffers another setback because the deeds in Young's chain are construed against him. Absent a Flux Capacitor and a DeLorean[6], which the law does not provide,[7] T.L. Smith cannot undo his sale to Trundle, the illegal re-plat, and mess with the Young chain of title.

---

[6] The "Flux Capacitor" and DeLorean were used for time travel in the 1980's movie *Back to the Future*, Universal Pictures (1985).

[7] *See generally Gov't Personnel Mut. Life Ins. Co. v. Wear*, 251 S.W.2d 525, 529 (Tex. 1952) ("the duty of courts [is] to construe a law as written . . . and not look for extraneous reasons to be used as a basis for reading into a law an intention not expressed nor intended to be expressed therein.")

19

Given that no express reservation of the bed is present in the Young chain of deeds from T.L. Smith, Lot 52 extends to the center of Big Sandy Creek. *See Ulbricht*, 325 S.W.2d at 673; PX 4. Further, no easement was ever identified in the 1947 plat. The property from the 1947 plat, deeded through to Young, runs "to the center of Big Sandy Creek." Plain and simple.

Even if the development of a "gully" took place between the period of 1947, when the legal plat was formed, the botched 1962 re-plat, and the surveys performed in preparation for the case at bar, "the title to land is not changed by its being submerged beneath a lake [or gully or creek], even though the public has rights in and upon the navigable waters of the lake." *Coastal Indus. Water Auth. v. York*, 532 S.W.2d 949, 953 (Tex. 1976). "Submergence does not necessarily destroy the title of the owner." *Id.* at 954. In 1962 a gully appears on the re-plat; however, this does not affect Young as the 1962 attempt at re-plat was illegal.

**2.    No defendant satisfied the elements of adverse possession; thus, as a matter of legal and factualy sufficiency the judgment should be reversed.**

No evidence satisfied the well-settled elements of adverse possession for either the TLS Defendants or the HOA Defendant. The elements of adverse possession are clear:

> "***Adverse possession***" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person (Tex.

20

Civ. Prac. & Rem. Code § 16.021(1) (emphasis added)).

"***Peaceable possession***" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property (*Id.* § 16.021(3)).

"***Title***" means a regular chain of transfers of real property from or under the sovereignty of the soil (*Id.* § 16.021(4)).

"***Color of title***" means a consecutive chain of transfers to the person in possession that . . . is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty . . . . (*Id.* § 16.021(2)).

"Since adverse possession is statutorily defined as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another," . . . parties are "required to prove . . .  that they satisfied all the requirements of this definition." *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985). Here, the Defendants could not prove adverse possession whatsoever.

### a. *No evidence supported adverse possession by the TLS Defendants*

All of the limitations period within Texas Civil Practices & Remedies Code § 16 require adverse possession, which is defined *supra.* The only years of claims that can apply to the TLS Defendants are the 10-, 5-, and 3-year statutes as they did

21

not acquire the property until 1998.[8] No party testified with any personal knowledge as to visible and actual possession prior to 1998.

Even if admitted without objection, legally incompetent evidence may not support a judgment. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 n. 1 (Tex. 2004). Here, the TLS Defendants' witness, Bruce Smith, was legally incompetent to testify about personal knowledge of his predecessors observations or actions. Further, he had no personal knowledge and offered zero evidence of any actual and visible appropriation of real property. This is an essential element for which Defendants bore the burden of proof. There is zero evidence to support this judgment. Absent any personal knowledge and testimony about actual and visible appropriation, no knowledge is attributable to Young or his predecessors-in-title, and thus no evidence supports any adverse possession claim on the element of actual and visible appropriation.

### b. *No evidence supported adverse possession by the HOA Defendants*

The HOA Defendant, having acquired the property in 2008 and this suit being filed in 2010, cannot claim any adverse possession by itself; the only means would be by tacking. *See* TEX. CIV. PRAC. & REM. CODE § 16.023 (permitting

---

[8] Even if one were to permit tacking from the TLS Defendants into the heirs of T.L. Smith, their predecessors-in-interest, to achieve the 25-year limitations period, absolutely zero evidence existed in the record to support the elements of actual and visible appropriation.

tacking of periods if there is privity between adverse possession claimants).

Because the TLS Defendants' cannot satisfy the larger limitations periods, the HOA by definition cannot meet its own burden of proof for adverse possession.

**3. The trial court's Findings of Fact are legally insufficient as the evidence from the trial, while sparse, is conclusive regarding the validity of Young's claims to title.**

   ***a. Young offered conclusive evidence of his ownership to the middle of Big Sandy Creek, regardless of all the post-hoc conjecture about T.L. Smith's intentions, which contradict the Findings of Fact.***

Both parties challenged the construction of the chain of Young's conveyances. That fact alone does not render the 1955 Trundle chain invalid. In fact, as Texas law has long held, conclusive evidence may very well be disputed at trial. It is the effect of conclusive evidence under legal rules of application. "Texas courts conducting a no-evidence review traditionally do not disregard contrary evidence that conclusively establishes the opposite of a vital fact." *City of Keller*, 168 S.W.3d at 814.

Conclusive evidence is so binding that when it regards written instruments, that if "it were proved by twenty bishops that either party, when he used the words [in a contract], intended something else than the usual meaning which the law imposes upon them, he would still be held" to those words. *Id.* (quoting Judge Learned Hand in *Hotchkiss v. Nat'l City Bank*, 200 F. 287, 293 (S.D.N.Y. 1911)).

The Findings of Fact were legally insufficient because the record showed "a

23

complete absence of evidence to support a vital fact, (2) the court [was] barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact [was] no more than a mere scintilla, or (4) the evidence conclusively establishe[d] the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810.

The trial court erred in its Findings of Fact as follows:

- Item 2e: No evidence at all was presented to the court that Lot 139 adjoins the 1.4777 acre tract. The Crichton survey does not make a call to Lot 139 when describing the 1.4777 acres (the first time that tract is referred to by that acreage). *See* DX 21.

- Item 2f: No evidence showed that West Darleen Drive was properly depicted in the 2014 survey; it does not match the 1962 plat nor does it show the entirety of the extension. *See* DX 6, 21.

- Item 3: No evidence shows how T.L. Smith, Jr., could record the 1962 plat which reconveyed existing land to other people, and for which he could not show a clear chain of title. PX 4; DX 6.

- Item 7: No evidence in the entire record showed that the TLS Defendants every used the properties as preserved lands or parklands.

- Item 8: No evidence in the entire record showed that any of the Defendants had ever used Lot 140 as a boat launch or other point of access to Lake

Travis, as a preserved land, or a parkland. While one Defense witness speculated it could be used as such, no personal testimony ever showed this use actually occurred.

- Item 14: Sufficient objective evidence in both the public record of Travis county (and as noted in Item 2.d. of the Findings of Fact) show that all deeds in the chain from T.L. Smith, Jr., to Trundle, to her successors, to Young include the parcel of land lying between the extension of the side lot lines to the center of Big Sandy Creek. No competent deed evidence contradicts this unambiguous chain of title and the trial court was bound by rules of law and evidence from changing the construction of this unambiguous chain of deeds.

- Item 16: The evidence clearly shows a conflict between Young's property, from the Trundle line, and Lot 140. Further, T.L. Smith, who mapped both the gully and Big Sandy Creek, identified the difference but conveniently did not include Lot 52 on his botched attempt at reconveyance of Trundle's land. Absent a reconveyance with Trundle's permission, the trial court was bound to disregard the botched 1962 re-plat.

- Item 18: The TLS Defendants could never have owned property that T.L. Smith deeded to Trundle in 1955; thus, because Lot 140 could never have been owned by Smith under the legal canon of *nemo dat quod non habet*, Smith

could not have given Lot 140 to any party.

- Item 20: Young had no knowledge of the 1962 plat extension of West Darlene Drive, the unpaved portion, as the botched 1962 plat has no ties to Lot 52, and the paved section of the extension never conflicted with Lot 52. Young blocked access to his land instantly and challenged the HOA even prior to its acquisition of alleged title. 2RR.87 ll. 5-8; 2RR.87 ll. 17-21; 2RR.87 ll. 17-21. Thus, he never had constructive notice of any conflict and defended any notice vigorously. 3 RR.22 ll 6-14; 3RR.34 ll. 35-35.

- Item 21: No evidence ever identified continual use of West Darlene Drive across Lot 140. Both Plaintiff and Defense witnesses testified as to Plaintiff's prohibition of its use and to the blockage which caused this lawsuit. 2RR.236 ll. 3-7; 3RR.34 ll. 35-35.

- Item 22: Plaintiff testified, and Defense witness Roberts admitted that Plaintiff told the HOA they were wrong prior to their purchase of Lot 140. 3 RR.22 ll 6-14; 3RR.34 ll. 35-35.

- Item 23: No evidence showed an effort to block access to Lot 140. The evidence showed an effort to block access to Lot 52. 2RR.113 ln. 9 - 2RR.114 ln. 22.

- Item 24: The evidence showed Plaintiff blocked access to the unpaved portion of the extension, which stops at his property line;

26

- Item 26: The evidence does not show a blockade on Lots 139 and the 1.4777-acre tract. The blockade was on the unpaved boundary preventing entrance to Lot 52. 2RR.113 ln. 9 - 2RR.114 ln. 22

- Item 27: The blockade was never described as blocking entrance to Lots 139 and the 1.4777-acre tract. 2RR.113 ln. 9 - 2RR.114 ln. 22.

Item 28: As identified Item 8, the TLS Defendants and their successors could not have owned Lot 140 (having been previously conveyed), and thus Plaintiff's actions could not deny them access to anything they owned.

Each of these flawed factual findings in the trial court, despite Young's *pro se* endeavor, demand reversal.

### b. *The trial court's conclusions of law have no support in the facts, nor are they proper legal conclusions given the questions of law posed to the court; this Court should reverse the decision of the trial court.*

The trial court's Conclusions of Law have no support in the record.

- Item 40: No constructive notice could have been made by Young or his predecessors that Lot 52 was affected in 1962. The plat does not show its relationship with Lot 52 or the extended property. The botched 1962 plat calls to be out of Lot 57. There is no Lot 57 on the 1947 plat, so this is a legal impossibility. *See* PX 2; DX 6.

- Item 41: The reasoning of Item 40 applies here as well. No record evidence showed T.L. Smith subsequently regaining rights to Lot 52. It is a botched

27

re-plat without notice. *See* PX 2; DX 6.

- Item 43: As a result of the botched 1962 re-plat, no notice flowed to Young from the 1998 conveyances of the TLS Defendants as he could not have known about the botched 1962 re-plat. *See* PX 2; DX 6.

- Item 44. As a result of the botched 1962 re-plat, no notice flowed to Young from the 2008 conveyances to the HOA Defendant of the 1.4777-acre tract. *See* PX 2; DX 6.

- Item 52: No competent evidence supports the legal conclusion that the extension has an easement over Lot 52. *See* PX 2; DX 6.

- Item 55: No competent evidence by either party showed any trespass over Lots 139 or the 1.4777-acre tract. Defense witnesses testified that the actions occurred over the unpaved roadway, and Lots 139 and the tract do not include any portion of the easement. 2RR.113 ln. 9 - 2RR.114 ln. 22; 2RR.236 ll. 3-7; 3RR.34 ll. 35-35; PX 4; DX 6.

- Item 56: The court legally concluded, in error, that Young is permanently enjoined from his own property, property that under chain of title extends to the "center of Big Sandy Creek." Young's chain of title clearly gives him that right. PX 4; *see* n. 5, *supra*.

## CONCLUSION

**For the foregoing reasons, Appellants ask the Court to:**

➢ Reverse this case and render judgment in favor of Young because the 1962 re-plat was illegal;

➢ Reverse the award of attorney's fees as to the declaratory judgment as Young prevailed on the validity of his chain of title.

➢ Award Young any and all relief to which he is entitled in law or equity.

Respectfully submitted,


    /s/ Stephen Casey

Stephen Casey
Texas Bar No. 24065015

595 Round Rock West Drive, Suite 102
Round Rock, Texas 78681
Telephone: 512-257-1324
Fax: 512-853-4098
stephen@caseylawoffice.us

## CERTIFICATE OF COMPLIANCE

The preceding brief contains 6,311 words within the sections identified under Tex. R. App. P. 9.4, typed upon Microsoft Word for Mac 2011, Baskerville 14 point font.

/s/ Stephen Casey
Stephen Casey

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing brief and accompanying Appendix has been served on all parties to the trial court judgment on Monday, March 23, 2015, efile and/or facsimile transmission:


/s/ Stephen Casey
Stephen Casey


*Appellees*

Trails End Homeowner's Association, Inc., and Van Keene

TLS Properties, Ltd., and TLS Operating Company, LLC.

Rick Durapau
11907 Misty Brook Drive
Austin, TX 78727
Phone: 512-346-4359

*Trial and Appellate Counsel for Appellees*

Christopher R. Mugica
JACKSON WALKER LLP
1000 Congress Avenue, Suite 1100
Austin, TX 78701-4042
Phone: 512-236-2000
cmugica@jw.com

Jeff Tippens
SCANLAN, BUCKLEY & YOUNG
602 West 11th Street
Austin, TX 78701
Phone: 512-478-4651

Jonathan Quick
720 Brazos St., Ste. 700
Austin, TX 78701-2974
Phone: 512-499-3644
derekquick@strasburger.com

*Pro se*

first class certified mail
return receipt requested

30

## NO. 03-14-00304-CV

In the Third Court of Appeals

Austin, Texas

**MIKAEL AND LAURA JUDAH,** *APPELLANTS*

*v.*

**EMC MORTGAGE CORPORATION**, *APPELLEE*

APPEAL FROM CAUSE NO. D-1-GN-11-003275
345TH DISTRICT COURT OF TRAVIS COUNTY, TEXAS
HON. JON WISSER PRESIDING

## APPELLANT'S APPENDIX

Stephen Casey
Texas Bar No. 24065015

CASEY LAW OFFICE, P.C.
595 Round Rock West Drive
Suite 102
Round Rock, Texas 78681
Telephone: 512-257-1324
Fax: 512-853-4098
stephen@caseylawoffice.us

*Counsel for Appellants*
*Mikael and Laura Judah*

**ORAL
ARGUMENT
REQUESTED**

i

# TABLE OF CONTENTS

1. Copy of Final trial Order ................................................................................Tab 1

2. Copy of Findings of Fact and Conclusions of Law ........................................Tab 2

3. Text of 1945 Texas Re-platting Law ...........................................................Tab 3

4. 1947 Plat ....................................................................................................Tab 4

5. 1955 Deed from Smith to Trundle ...............................................................Tab 5

6. 1962 Re-Plat ..............................................................................................Tab 6

7. 1993 Deed from Trundle to Scott ...............................................................Tab 7

8. 1997 Deed from Scott to Young .................................................................Tab 8

# TAB 1

NOTICE SENT: FINAL INTERLOCUTORY NONE
DISP PARTIES: ALL
DISP CODE: CVD / CLS 41618
REDACT PGS:
JUDGE SHS CLERK ____

Filed in The District Court
of Travis County, Texas

MAY 30 2014 BD

At _____ 3:45 ___ P. M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-10-003864

| | | |
|---|---|---|
| DAVID YOUNG, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 200TH JUDICIAL DISTRICT |
| | § | |
| TRAILS END HOMEOWNERS | § | |
| ASSOCIATION, INC., TLS PROPERTIES, | § | |
| LTD., TLS OPERATING COMPANY, | § | |
| LLC, VAN KEENE, and RICK DURAPAU, | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## FINAL JUDGMENT

BE IT REMEMBERED on this day that this Final Judgment was presented to the Court after the above-styled lawsuit was called for trial on May 27, 2014, after Plaintiff/Counter-Defendant David Young ("Plaintiff"), Defendant/Counter-Plaintiff Trails End Homeowners Association, Inc. (the "Association"), Defendant TLS Properties, Ltd. ("TLS Properties"), Defendant TLS Operating Company, LLC ("TLS Operating Company"), Defendant Van Keene ("Keene"), and Defendant Rick DuRapau ("DuRapau") (the Association, TLS Properties, TLS Operating Company, Keene, and DuRapau are sometimes referred to herein collectively as the "Defendants") appeared and announced ready for trial, and after the Court conducted a two-day bench trial in which it heard the evidence and arguments of the parties and announced its decision in favor of the aforementioned defendants and counter-plaintiff, the Court hereby enters this Final Judgment to memorialize said decision. The Court finds for Defendants on all requested relief, and:

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that Plaintiff take nothing by his suit against the Association, TLS Properties, TLS Operating Company, Keene and DuRapau.

1

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the legal description for Lot 139 of the Trails End Subdivision in Travis County, Texas ("Lot 139"), as currently owned by the Association, is depicted in the 2008 "Deed" between TLS Properties and the Association attached hereto as Exhibit 1, and the 2014 land survey prepared by Crichton & Associates, Inc. attached hereto as Exhibit 3.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the legal description for the 1.4777-acre tract of land adjoining Lot 139 (the "1.4777-acre tract"), as currently owned by the Association, is depicted in the 2008 "Quitclaim" between TLS Properties and the Association attached hereto as Exhibit 2, and the 2014 land survey prepared by Crichton & Associates, Inc. attached hereto as Exhibit 3.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that West Darleen Drive, including the portion known as West Darleen Drive Extension (collectively, "West Darleen Drive"), as platted and recorded in the 1962 map or plat recorded in Volume 16, Page 36 of the Plat Records of Travis County, Texas, and attached hereto as Exhibit 4, is a public right-of-way over which the Association and its members have the right to travel fully and freely.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff is permanently enjoined from: (1) obstructing or interfering with the Association's ingress and egress over any portion of West Darleen Drive (including both the paved portion and the unpaved portions of the public right-of-way); and (2) trespassing onto, obstructing, or interfering with the Association's access to – or possession, use, and enjoyment of – Lot 139 and the 1.4777-acre tract.

2

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Final Judgment shall serve and operate as a muniment of title concerning the Association's ownership of Lot 139 and the 1.4777-acre tract.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Association shall have and recover from Plaintiff the reasonable and necessary attorney fees incurred by the Association in connection with this lawsuit in the sum total amount of FIFTY THOUSAND DOLLARS AND NO CENTS ($50,000.00), together with post-judgment interest thereon at the statutory rate of FIVE PERCENT (5%) per annum from the date of entry of this Final Judgment until paid.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, in the event of an unsuccessful appeal by Plaintiff to the Third Court of Appeals for the State of Texas, the Association shall have and recover from Plaintiff the reasonable and necessary attorney fees incurred by the Association in connection with said appeal not to exceed TWENTY THOUSAND DOLLARS AND NO CENTS ($20,000.00), together with post-judgment interest thereon at the then-applicable statutory rate.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, in the event Plaintiff files a petition for review with the Supreme Court of Texas and said petition is not granted after a response is filed, the Association shall have and recover from Plaintiff the reasonable and necessary attorney fees incurred by the Association in connection with said petition not to exceed FIVE THOUSAND DOLLARS AND NO CENTS ($5,000.00), together with post-judgment interest thereon at the then-applicable statutory rate.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that, in the event the Supreme Court of Texas grants Plaintiff's petition for review, but denies Plaintiff relief, the

3

Association shall have and recover from Plaintiff the reasonable and necessary attorney fees incurred by the Association in connection with said appeal not to exceed TEN THOUSAND DOLLARS AND NO CENTS ($10,000.00), together with post-judgment interest thereon at the then-applicable statutory rate.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Final Judgment is a **final** judgment that disposes of all claims, issues and parties.

**IT IS SO ORDERED, ADJUDGED AND DECREED.**

SIGNED this 30th day of _____May_____, 2014

_____
THE HONORABLE SCOTT H. JENKINS
JUDGE PRESIDING

4

**APPROVED AS TO FORM AND SUBSTANCE AND ENTRY REQUESTED BY:**

**JACKSON WALKER L.L.P.**

By: _(signature)_____
Christopher R. Mugica (TSBN 24027554)
Emilio B. Nicolas (TSBN 24058022)
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: (512) 236-2000
Facsimile: (512) 236-2002
ATTORNEYS FOR DEFENDANTS TRAILS
END HOMEOWNERS ASSOCIATION, INC.
AND VAN KEENE

**STRAUSBURGER & PRICE, LLP**

By: _Derek Quick (signed w/ permission)_
Derek Quick (TSBN 24072471)
720 Brazos Street, Suite 700
Austin, Texas 78701
Telephone: (512) 499-3600
Facsimile: (512) 499-3660

ATTORNEYS FOR DEFENDANTS
TLS PROPERTIES, LTD.
AND TLS OPERATING COMPANY, LLC

**SCANLAN, BUCKLE & YOUNG, P.C.**

By: _Jeff Tippens (signed w/ permission)_
W. Thomas Buckle (TSBN 03299000)
Jeff Tippens (TSBN 24009121)
602 West 11th Street
Austin, Texas 78701
Telephone: (512) 478-4651
Facsimile: (512) 478-7750

ATTORNEYS FOR DEFENDANT TRAILS
END HOMEOWNERS ASSOCIATION, INC.

**RICK DURAPAU**

By: _Rick DuRapau (signed w/ permission)_
11907 Misty Brook Drive
Austin, Texas 78727
Telephone: (512) 346-4359
Facsimile: n/a
PRO SE / DEFENDANT RICK DURAPAU

**DAVID YOUNG**

By: _____
10336 W. Darleen Drive
Leander, Texas 78641
Telephone: (512) 487-5701
Facsimile: n/a
PRO SE / PLAINTIFF DAVID YOUNG

5

96

# Exhibit 1

 DEED   2008187492

2 PGS

# DEED

DATE:   Effective the __10th__ day of __November__, 2008.

GRANTOR:   TLS PROPERTIES, LTD.

GRANTOR'S MAILING ADDRESS:   P.O. Box 19572
Houston, Texas 77224

GRANTEE:   Trails End Homeowners Association, Inc.

GRANTEE'S MAILING ADDRESS:   P.O. Box 1191
Cedar Park, Texas 78630

CONSIDERATION:

Cash and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

PROPERTY:

Lot 139, Re-Subdivision No. 5, Trails End Subdivision, according to the map or plat thereof recorded in volume 16, Page 36 of the Plat Records of Travis County, Texas.

Grantor, for the consideration grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold the property to Grantee, Grantee's heirs, executors, administrators, successors, and/or assigns forever.

GRANTOR HAS NOT MADE AND IS NOT MAKING ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, WITH RESPECT TO THE PROPERTY OR ANY IMPROVEMENTS THEREON, INCLUDING, BUT NOT LIMITED TO, ANY REPRESENTATIONS OR WARRANTIES AS TO (A) HABITABILITY, MERCHANTABILITY OR SUITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR USE; (B) THE NATURE AND CONDITION OF THE PROPERTY, OR ANY IMPROVEMENTS THEREON, INCLUDING, WITHOUT LIMITATION, STRUCTURAL CONDITION, SOIL, GEOLOGY OR THE FITNESS OF THE PROPERTY FOR USE BY THE GRANTEE; AND (C) THE SUITABILITY OF THE PROPERTY AND ALL IMPROVEMENTS THEREON FOR THE USE OR PURPOSE INTENDED BY THE GRANTEE. THE SALE OF THE PROPERTY AND ALL IMPROVEMENTS THEREON IS MADE IN AN "AS IS," "WHERE IS" AND "WITH ALL FAULTS" CONDITION. GRANTEE, BY ACCEPTING THIS DEED, ACKNOWLEDGES AND AGREES THAT GRANTEE IS PURCHASING THE PROPERTY AND ALL IMPROVEMENTS THEREON IN AN "AS IS," "WHERE IS"

TEHOA 00062

## DEFENDANT'S EXHIBIT 17

AND "WITH ALL FAULTS" CONDITION, AND THAT GRANTEE IS NOT RELYING UPON ANY REPRESENTATIONS OR STATEMENTS OF THE GRANTOR OR THE GRANTOR'S AGENTS IN PURCHASING THE PROPERTY.

When the context requires, singular nouns and pronouns include the plural.

TLS PROPERTIES, LTD., acting by and through its General Partner TLS Operating Co., LLC

By: _____

Bruce Smith, President

### ACKNOWLEDGMENT

STATE OF TEXAS       §
                             §

COUNTY OF HARRIS    §

This instrument was acknowledged before me on the 4th day of November, 2008 by Bruce Smith as President of TLS Operating Co, LLC, General Partner of TLS PROPERTIES, LTD.

_____
Notary Public in and for the State of Texas

AFTER RECORDING RETURN TO:

Scanlan, Buckle & Young, P.C.
602 West 11th Street
Austin, Texas 78701

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

2008 Nov 17 04:48 PM   2008187492
BARTHOD $20.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

TEHOA 00063

TEHOA 00064

RECEIVED

DEC 0 3 2008

SCANLAN, BUCKLE & YOUNG, P.C.

100

# Exhibit 2

DEED    2008187491
5 PGS

# QUITCLAIM

DATE:    Effective the _10-th_ day of _November_ , 2008.

GRANTOR:    TLS PROPERTIES, LTD.

GRANTOR'S MAILING ADDRESS:    P.O. Box 19572
Houston, Texas 77224

GRANTEE:    Trails End Homeowners Association, Inc.

GRANTEE'S MAILING ADDRESS:    P.O. Box 1191
Cedar Park, Texas 78630

CONSIDERATION:

     Cash and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

PROPERTY:

     A portion of the underwater land identified in Volume 16, Page 36 of the Plat Records of Travis County, Texas, out of the Samuel Hayford Survey No. 53 in Travis County, Texas, being more particularly described by the metes and bounds description and survey map in Addendum "A", attached hereto and incorporated in herein for all purposes.

     For the Consideration, Grantor quitclaims to Grantee all of Grantor's right, title, and interest in and to the Property, to have and to hold it to Grantee, Grantee's heirs, executors, administrators, successors, and assigns forever. Neither Grantor nor Grantor's heirs, executors, administrators, successors, or assigns shall have, claim, or demand any right or title to the Property or any part of it.

     When the context requires, singular nouns and pronouns include the plural.

            TLS PROPERTIES, LTD., acting by and through its General Partner TLS Operating Co., LLC

By: _____
            Bruce Smith, President

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record and filed. Witness my hand and seal of office on

Dana DeBeauvoir, County Clerk
By Deputy

J. S. WILLIAMS

# DEFENDANT'S EXHIBIT 18

Young 000207
20120623-20120623

## ACKNOWLEDGMENT

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

This instrument was acknowledged before me on the 10ᵗʰ day of November, 2008 by Bruce Smith as President of TLS Operating Co., LLC, General Partner of TLS PROPERTIES, LTD.

Notary Public in and for the State of Texas

## AFTER RECORDING RETURN TO:

W. Thomas Buckle
Scanlan, Buckle & Young, P.C.
602 West 11th Street
Austin, Texas 78701

I, Dana Debeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office

County Clerk
by:

J. S. WILLIAMS

Young 000208
20120623-20120623

## ADDENDUM "A"

Description of a portion of the underwater land identified in Volume 16, Page 36 of the Plat Records of Travis County, Texas:

1.  Beginning at the western most point of Lot 139 as shown on Plat Map in Vol. 16, Page 36, being Subdivision No. 5 of Original Lot 57 of Trails End Subdivision shown on Page 331 of Vol. 4 in deed records of Travis County and being a part of Samuel Hayford Survey Abstract #53; follow the western line of Lot 139 N 58 degrees 53 minutes E to a point 122.81 feet from point of beginning. Said point is also the intersection of the extension of the southern lot line of Lot 134 and the western lot line of Lot 139.

2.  Follow the extended southern lot line of Lot 134 N 74 degrees 08 minutes 15 seconds W to the southern most point of Lot 134 being designated "PK Nail Found" on Steger & Bizzel Survey Number 20762 – Trails End – 139-140, a copy of which is attached hereto and incorporated herein as Exhibit 1. Follow the southern lot line of Lot 134 N 74 degrees 08 minutes 15 seconds W for 343 plus or minus feet, said point being the western most corner of Lot 134 as platted in said plat and said point being the center line of Big Sandy Creek (the natural boundary of this part of Trails End Subdivision).

3.  Follow the center line of Big Sandy Creek bed as shown on said plat map (Vol. 16, Page 36) in a southwesterly direction around said Darleen's Landing until the creek bed intersects an extension of the northern lot line of Lot 52 as shown on said Steger & Bizzel Survey 20762.

4.  Follow extended northern boundary line of Lot 52 S 80 degrees 20 minutes E to the point where it intersects the northern lot line of Lot 140 as shown on said plat map and said Steger and Bizzel Survey 20762.

5.  Follow the northern lot line of Lot 140 N 58 degrees 53 minutes E to the point of beginning.

6.  Subject to the 60-foot roadway easement shown in plat recorded in Vol. 16, Page 36.

I, Dana D___ ____w____, County Clerk, Travis County, Texas, _____ ____ ___tify that this is a true and correct ____ ____ _____ ____ ____ ____ on file in my office. Witn___ ____ my hand and ____ seal of office on

Dana _____ County Clerk

by _____

J. S. WILLIAMS

Young  000209
20120623-20120623

Young 000210
20120623-20120623



Survey, For
Trails End Homeowners Association
Lots 139 & 140
Resubdivision No.5, Block #57
Trails End Subdivision
Travis County, Texas

I, Dana DeBeauvoir, County Clerk, Travis County,
Texas, do hereby certify that this is a true and
correct copy as the same appears of record in my office
Witness my hand and official seal of office.

J. S. WILLIAMS

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Dana A Beauvoir*

2008 Nov 17 04:45 PM   2008187491
BARTHOD $32.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

I, Dana De Beauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as the same appears of record in my office. Witness my hand and seal of office.

J. S. WILLIAMS

Young  000211
20120623-20120623

# Exhibit 3



TEHOA 00544

**DEFENDANT'S EXHIBIT 21**

# Exhibit 4

THE STATE OF TEXAS }
COUNTY OF TRAVIS }

I, MISS EMILIE LIMBERG, County Clerk of Travis County, Texas do hereby certify that on the 22 day of October, A.D. 1962 the Commissioners Court of Travis County, Texas passed an order authorizing the filing for record of this Plat and that said order has been duly entered in the minutes of said Court in Book 1, page 152.

WITNESS MY HAND AND SEAL OF OFFICE this the 22 day of Oct., 1962.

MISS EMILIE LIMBERG
Clerk of the County Court
Travis County, Texas

By: _____
Deputy

Oct 22-62 RECAB     2892

THE STATE OF TEXAS }
COUNTY OF TRAVIS }

I, MISS EMILIE LIMBERG, Clerk of the County Court within and for the County and State aforesaid do hereby certify that the within and foregoing instrument of writing, with its Certificate of Authentication, was filed for record in my office on the 22 day of Oct., A.D. 1962 at 1:30 o'clock P.M., and duly recorded on the 22 day of Oct., A.D. 1962 at 1:30 o'clock P.M. in the Plat records of said County, in book 10, at page 36, inclusive.

WITNESS MY HAND AND SEAL of the County Court of said County, the date last above written.

MISS EMILIE LIMBERG
Clerk of the County Court
Travis County, Texas

By _____
Deputy

SEPTIC TANK NOTE: Each house constructed in this Subdivision shall be connected to a septic tank of a design approved by the State Department of Health.

In approving this plat by the Commissioner's Court of Travis County, Texas it is understood that the building of all streets, roads and other public thoroughfares delineated and drawn on this plat, and all the bridges and culverts necessary to be constructed or placed in such streets, roads or other public thoroughfares, or in connection therewith, will be the responsibility of the owner and for the developer, of the tract of land covered by this plat in accordance with plans and specifications prescribed by the Commissioner's Court of Travis County, Texas, and the Commissioner's Court of Travis County, Texas assumes no obligation to build the streets, roads and other public thoroughfares shown on the plat, or of constructing any bridges or culverts in connection therewith.

THE STATE OF TEXAS }
COUNTY OF HARRIS }

I, T. L. SMITH, JR., a licensed Civil Engineer of Harris County, Texas, and the co-owner of the original "TRAIL'S END" Subdivision in Travis County, Texas as shown on the map of said Subdivision which is recorded in Book 4, page 331 of the Plat Records of said Travis County, do hereby certify that this map correctly represents a re-subdivision No. 5, containing 10.5 acres, which includes park and road easement, being a part of original Block #57, of the said "TRAIL'S END" Subdivision, in the Samuel Hayford Survey, Abstract #33, as made on the ground by me; and the streets and roads and park, as shown on this map, are hereby dedicated to the use of the Public.

Subscribed and sworn to by me on this the 18th day of Sept., A.D. 1962.

T. L. SMITH, Jr.

THE STATE OF TEXAS }
COUNTY OF HARRIS }

BEFORE ME, the undersigned authority, on this day personally appeared T. L. Smith, Jr., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 18th day of Sept., 1962.

Notary Public in and for
Harris County, Texas

MAP of SUBDIVISION number 5 of 10.5 acres of ORIGINAL LOT number 57, of TRAILS END SUBDIVISION as shown on map recorded in book 4, of the deed records of Travis County, Texas, being a part of the Samuel Hayford Survey, Abstract number 33, in said County.

FIELD NOTES of the center line of 60 foot road from the extreme North end of WEST DARLEEN DRIVE, (See "A" on this map) to the East line of lot number 128, and along the West line of said road from there to the center of Big Sandy Creek, at the BOAT LANDING, (lot number 140)

Beginning at the center of the extreme North end of West Darleen Drive, as shown on map recorded in Book 4, on page 331 mentioned above;

Scale 1" = 200'

N

Travis County, Texas
Vol /6 page 36

DEFENDANTS EXHIBIT 6

TEHOA 00190

BK14162 PG24     DC

# TAB 2



# TRAILS - END
## LAKE TRAVIS
## SUBDIVISION

SUBDIVIDED JANUARY 1948 BY T. A. JACKSON.
LICENSED STATE LAND SURVEYOR.
AUSTIN, TEXAS.

TRAVIS COUNTY, TEXAS
VOL. 4 PAGE 331

SAMUEL HAYFORD SURVEY NO. 53.

HARRIS SURVEY NO. 516

J. S. WILLIAMS

JUL 17 2012

PLAINTIFF'S
EXHIBIT
2

# TAB 3

Tex. Rev. Civ. Stat. art. 974a

Sec. 1 as amended Acts 1949, 51st Legislature:
"That hereafter every owner of any tract of land situated within the corporate limits of any city in the State of Texas, who may hereafter divide the same in two or more parts for the purpose of laying out any subdivision of any tract of land, shall cause a plat to be made thereof which shall accurately describe all of said subdivision or addition by metes and bounds * * *, and dimensions of all streets, alleys, or other portions of same intended to be dedicated to public use * * *."

Sec. 2:
"That every such plat shall be duly acknowledged by owners or proprietors of the land, or by some duly authorized agent of said owners or proprietors, in the manner required for the acknowledgment of deeds; and the said plat, subject to the provisions contained in this Act, shall be filed for record and be recorded in the office of the County Clerk of the County in which the land lies."

Sec. 3: "That it shall be unlawful for the County Clerk of any county in which such land lies to receive or record any such plan, plat or replat, unless and until the same shall have been approved by the City Planning Commission of any city affected by this Act,

Sec. 4: "If such plan or plat, or replat shall conform to the general plan of said city and its streets, alleys, parks, playgrounds and public utility facilities and if same shall conform to such general rules and regulations, if any, governing plats and subdivisions of land falling within its jurisdiction as the governing body of such city may adopt and promulgate then it shall be the duty of said City Planning Commission or of the governing body of such city, as the case may be, to endorse approval upon the plan, plat or replat submitted to it."

Sec. 5: "That any such plan, plat or replat may be vacated by the proprietors of the land covered thereby at any time before the sale of any lot therein by a written instrument declaring the same to be vacated, duly executed, acknowledged and recorded in the same office as the plat to be vacated, provided the approval of the City Planning Commission or governing body of such city, as the case may be, shall have been obtained as above provided, and the execution and recordation of such shall operate to destroy the force and effect of the recording of the plan, plat or replat so vacated.

Sec. 6: "The approval of any such plan, plat, or replat shall not be deemed an

acceptance of the proposed dedication and shall not impose any duty upon such city concerning the maintenance or improvement of any such dedicated parts until the proper authorities of said city shall have made actual appropriation of the same by entry, use or improvement."

# TAB 4



DEFENDANT'S EXHIBIT

THE STATE OF TEXAS }
COUNTY OF TRAVIS }

I, MISS EMILIE LIMBERG, County Clerk of Travis County, Texas, do hereby certify that on the ___ day of October, A.D. 1962 the Commissioners Court of Travis County, Texas passed and entered of record an order authorizing the filing for record of this Plat, and that said order has been duly entered in the minutes of said Court in Book ___, page ___.

WITNESS MY HAND AND SEAL OF OFFICE this the 22 day of Oct. 1962.

MISS EMILIE LIMBERG
Clerk of the County Court
Travis County, Texas
By: _____
Deputy

THE STATE OF TEXAS }
COUNTY OF TRAVIS }

I, MISS EMILIE LIMBERG, Clerk of the County Court, within and for the County and State aforesaid, do hereby certify that the foregoing instrument of Writing, with its Certificate of Authentication, was filed for record in my office on the 22 day of Oct., A.D. 1962, at ___ o'clock __ M. and duly recorded on the 22 day of Oct., A.D. 1962, at ___ o'clock __ M. in the Plat records of said County, in Book ___, page ___ inclusive.

WITNESS MY HAND AND SEAL of the County Court of said County, the date last above written.

MISS EMILIE LIMBERG
Clerk of the County Court
Travis County, Texas
By: _____
Deputy

SEPTIC TANK NOTE: Each house constructed in this Subdivision shall be connected to a septic tank of a design approved by the State Department of Health.

In approving this plat by the Commissioner's Court of Travis County, Texas it is understood and the building of all streets, roads and other public thoroughfares dedicated and drawn on this plat, and all the bridges and culverts necessary to be constructed or placed in such streets, roads and other public thoroughfares, or in connection therewith, shall be the responsibility of the owner and/or the developer of the tract of land covered by this plat in accordance with plans and specifications of the Commissioner's Court of Travis County, Texas, and the Commissioner's Court of Travis County, Texas assumes no obligation to build the streets, roads and other public thoroughfares shown on the plat, or of constructing any bridges or culverts in connection therewith.

THE STATE OF TEXAS }
COUNTY OF HARRIS }

I, T. L. SMITH, JR., a licensed Civil Engineer of Harris County, Texas, and the co-owner of the original "Paul's END" Subdivision which is recorded in Travis County, ... page 531 of the Plat Records of said Travis County, do hereby certify that this map correctly represents re-subdivision of said map of said Subdivision, which includes park and road, easement, ... Block 15, ... and Block #37 of the said "Paul's END" Subdivision, being a part of original ... as made on the ground by me; and the streets, roads and park, as shown on this map, are hereby dedicated to the use of the public.

Subscribed and sworn to by me on this the 14th day of Sept. A.D. 1962.

T. L. SMITH.

THE STATE OF TEXAS }
COUNTY OF HARRIS }

BEFORE ME, the undersigned authority, on this day personally appeared T. L. Smith, Jr., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 14th day of Sept. 1962.

Notary Public in and for
Harris County, Texas

MAP of SUBDIVISION number 5 of 10.5 acres of ORIGINAL LOT number 52 of ... SUBDIVISION, as shown on page 531 in Book 4, of the deed records of Travis County, Texas being a part of the Samuel Hayford survey, Abstract number 53, in said County.

FIELD NOTES of the center line of 60 foot road from the extreme North end of WEST BARLEEN DRIVE, ...

Scale 1" = 200'

Oct 22-62 RecAB    2892    R45

# TAB 5

FEB 05 2013

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office.
Witness my hand... office at...

P. MACHADO

181—WARRANTY DEED WITH VENDOR'S LIEN        TEXAS STANDARD FORM

## The State of Texas,     1-70-1107   3ᵗ

**County of HARRIS**     }   Know All Men by These Presents:

That I, T. L. SMITH, JR.,

of the County of **Harris**     State of **Texas**,     for and in consideration

of the sum of     **TWELVE HUNDRED FIFTY & NO/100 ($1250.00)**

........................................................ DOLLARS

to **Me** paid, and secured to be paid, by

     SYLVIA A. TRIMBLE       as follows:

One Hundred and No/100 Dollars ($100.00) cash, together with one certain promissory note dated July 25, 1955, for $1150.00, with interest from date at the rate of 5% per annum, said note being payable in monthly installments of $20.00, or more, the first payment being due on or before the 25th day of August, 1955, and a like payment on or before the 25th day of each month thereafter until the entire amount, both principal and interest, is paid in full.

have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey, unto the said

     SYLVIA A. TRIMBLE

of the County of **Travis**,     State of **Texas**,     all that certain

Lot No. 52, in "Trail's End", Lake Travis Subdivision in Travis County, Texas, according to a map or plat of same of record in Plat Book No. 4, page 331, Plat Records of Travis County, Texas, together with that parcel of land included between the extension of side lines of said lot to the center line of Big Sandy Creek.

This conveyance is subject to all of the restrictions and covenants as contained in the instrument recorded in Book 356, page 28 of the Deed Records of Travis County, Texas, to which reference is made for complete information, which said instrument is captioned "Restrictions, Trail's End Subdivision, Travis County, Texas, O. A. Rittenhouse, et ux, to the Public."

TO .VE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said

     SYLVIA A. TRIMBLE, her

heirs and assigns forever and    I do hereby bind myself, my heirs, executors and administrators, to Warrant and Forever Defend, all and singular the said premises unto the said

     SYLVIA A. TRIMBLE, her

heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

But it is expressly agreed and stipulated that the Vendor's Lien is retained against the above described property, premises and improvements, until the above described note , and all interest thereon are fully paid according to   its face and tenor, effect and reading, when this deed shall become absolute.

WITNESS my hand , at Houston, Texas, this 25th day of July 19 55.

Witness at request of Grantor:

         T. L. SMITH, JR.

1-70-1107

PLAINTIFF'S
EXHIBIT
4

PENGAD 800-631-6989

P. MACHADO

FEB 05 2013

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

SINGLE ACKNOWLEDGMENT

**THE STATE OF TEXAS,**
**COUNTY OF HARRIS**

1-70-1108

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared T. L. SMITH, JR.

known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the day of **July** A. D. 19 55

(L. S.)

**NOTARY SEAL**

_Avie F. White_

Notary Public in and for **HARRIS**. WHITE County, Texas

Notary Public in and for Harris County, Texas

---

WIFE'S SEPARATE ACKNOWLEDGMENT

THE STATE OF TEXAS,
COUNTY OF

Notary Public in and for said County and State, on this day personally appeared

, wife of

, known

to me to be the person whose name is subscribed to the foregoing instrument, and having been examined by me privily and apart from having the same fully explained to her, she, the said

acknowledged to be her act and deed, and she declared that she had willingly signed the same for the purposes and therein expressed, and that she did not wish to retract it.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the day of A. D. 19

(L. S.)

Notary Public in and for County, Texas

FILED
Feb 13 10 10 AM 1978
Doris Shropshire
COUNTY CLERK
TRAVIS COUNTY, TEXAS

---

JOINT ACKNOWLEDGMENT

**THE STATE OF TEXAS,**
COUNTY OF

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared

and

, his wife, both

known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they each executed the same for the purposes and consideration therein expressed, and the said

, wife of the said

having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said

acknowledged such instrument to be her act and deed, and she declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the day of A. D. 19

(L. S.)

Notary Public in and for County, Texas.

---

**THE STATE OF TEXAS,**
COUNTY OF

I HEREBY CERTIFY that the foregoing instrument of writing with its certificate of authentication, was filed for record in my office on the day of , A. D. 19 at o'clock M., and was duly recorded by me on the day of A. D. 19

In Vol. , page , of the Records of said County.

WITNESS MY HAND and the Seal of the County Court of said County, at my office in the day and year last above written.

(L. S.)

STATE OF TEXAS          COUNTY OF TRAVIS
I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me; and was RECORDED, in the Volume and Page of the named RECORDS of Travis County, Texas, as stamped hereon by me, on
County Clerk Travis County, Texas

By _____, Deputy.
FEB 13 1978

CHARGE & RETURN TO

PRACY TITLE CO.

# TAB 6



# TAB 7

FILM CODE

00004994772

DOC. NO.

93079335

WARRANTY DEED WITH VENDOR'S LIEN

3:31 PM 9751    2 3 07/14/93    5.00 INDX

STATE OF TEXAS        )
                      )    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TRAVIS      )

3:31 PM 9751    2 3 07/14/93    5.00 RECH
53.72-CHK#
930793.35-DOC#

THAT ROBERT LEE GREGORY and wife, SYLVIA A. TRUNDLE GREGORY, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to the undersigned paid by the Grantee herein named, the receipt of which is hereby acknowledged, and the further consideration of the execution and delivery by the Grantee herein of that one certain promissory note of even date herewith in the principal sum of ONE HUNDRED SEVEN THOUSAND AND NO/100 DOLLARS ($107,000.00), payable to the order of ROBERT LEE GREGORY and wife, SYLVIA A. TRUNDLE GREGORY, "GRANTORS", as therein provided and bearing interest at the rates therein specified and providing for acceleration of maturity in event of default and for attorney's fees, the payment of which note is secured by the vendor's lien herein retained, and is additionally secured by a Deed of Trust of even date herewith to John W. Pleuthner, Trustee,

have GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CONVEY unto

JEF A. SCOTT and wife, LORI SCOTT

all of the following described real property, to wit:

LOT NO. FIFTY-TWO (52) IN "TRAIL'S END", LAKE TRAVIS SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT OF SAID SUBDIVISION OF RECORD IN BOOK 4, PAGE 331, OF THE TRAVIS COUNTY PLAT RECORDS, TOGETHER WITH THAT PARCEL OF LAND INCLUDED BETWEEN THE EXTENSION OF THE SIDE LINES OF SAID LOT TO THE CENTER LINE OF BIG SANDY CREEK.

SUBJECT, HOWEVER, to any and all restrictions, covenants, easements, taxes for the current year, and outstanding mineral interests, if any, of record in the County Clerk's office of said County and now in effect.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Grantees, their heirs and assigns forever, and we do hereby bind ourselves, our heirs and assigns to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said Grantees, their heirs and assigns, against every person whosoever lawfully claiming or to claim the same or any part thereof.

The vendor's lien against and superior title to the property are retained until each note described is fully paid according to its terms, at which time this deed shall become absolute.

REAL PROPERTY RECORDS
TRAVIS COUNTY, TEXAS

1

11977 0866

When the context requires, singular nouns and pronouns include the plural.


EXECUTED this 14th day of July, 1993.

ROBERT LEE GREGORY
SS# ████████████

SYLVIA A. TRUNDLE GREGORY
SS# ████████████


93-06-342/10336 Darleen Dr. W.


Mailing address of each Grantee:
JEF A. SCOTT
LORI SCOTT
10336 Darleen Drive W.
Leander, Texas  78641


STATE OF TEXAS      )
COUNTY OF TRAVIS    )

This instrument was acknowledged before me on the 7th day of July, 1993, by ROBERT LEE GREGORY and wife, SYLVIA A. TRUNDLE GREGORY.

Notary Public, State of Texas

PAULA K. MAYO
NOTARY PUBLIC
State of Texas
Comm. Exp. 07-29-96

AFTER RECORDING RETURN TO:    PREPARED IN THE LAW OFFICE OF:

Law Office                    Law Officer
John W. Pleuthner             John W. Pleuthner
Two Far West Plaza            Two Far West Plaza
3508 Far West, Suite 190      3508 Far West, Suite 190
Austin, TX  78731             Austin, TX  78731
                              512/345-1559



STATE OF TEXAS                 COUNTY OF TRAVIS
I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me; and was duly RECORDED, in the Volume and Page of the named RECORDS of Travis County, Texas, on

JUL 14 1993

COUNTY CLERK
TRAVIS COUNTY, TEXAS

FILED

93 JUL 14 PM 3: 34

COUNTY CLERK
TRAVIS COUNTY, TEXAS

REAL PROPERTY RECORDS
TRAVIS COUNTY, TEXAS

11977   0867

2

# TAB 8

*TATCC#18*      *F 8455-0101*     *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 DS*

*97-01-6608*

*Parcel # 1-8455-0101* **GENERAL WARRANTY DEED WITH VENDOR'S LIEN** CODE   VH

00005542879

THE STATE OF TEXAS     §

                     KNOW ALL MEN BY THESE PRESENTS

COUNTY OF TRAVIS     §

THAT, **JEF A. SCOTT AND WIFE, LORI SCOTT** hereinafter referred to as "Grantor" (whether one or more) for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to the undersigned paid by the Grantee herein named, the receipt and sufficiency of which is hereby acknowledged and confessed; AND FURTHER CONSIDERATION of the execution by Grantee of that one certain promissory note dated **FEBRUARY 4, 1997** herewith, in the original principal sum of **TWO HUNDRED FORTY-EIGHT THOUSAND EIGHT HUNDRED AND NO/100THS DOLLARS ($248,800.00)**, payable to the order of **TEXAS FINANCIAL CORPORATION**, to be paid in accordance with the provisions therein contained and providing for interest at the rate therein specified, and containing the usual and customary clauses pertaining to default and the payment of attorney's fees, and being secured by a Vendor's Lien to the extent of **$158,740.92**, which represents that portion of the **$248,800.00** note advanced to purchase the following described property; said Vendor's Lien hereinafter retained and additionally secured by Deed of Trust of even date herewith to JOHNNIE F. DAVIS, Trustee;

has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY, unto **T. DAVID YOUNG, A SINGLE MAN,** of the County of TRAVIS, State of Texas, whose mailing address is 10336 WEST DARLEEN DRIVE, LEANDER, TEXAS 78641 the following described property, situated in the County of TRAVIS, State of Texas, to-wit:

LOT FIFTY-TWO (52), OF TRAILS END, LAKE TRAVIS SUBDIVISION, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE RECORDED MAP AND/OR PLAT THEREOF, RECORDED IN VOLUME 4, PAGE 331, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Grantee, Grantee's heirs, executors, administrators, successors and/or assigns forever; and Grantor does hereby bind Grantor, Grantor's heirs, executors, administrators, successors and/or assigns, to WARRANT AND FOREVER DEFEND, all and singular the said premises unto the said Grantee, Grantee's heirs, executors, administrators, successors and/or assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

Taxes for the current year have been prorated to the date hereof and are assumed by the Grantee.

THIS CONVEYANCE is executed, delivered and accepted subject to all and singular any liens securing payment of any debt created or assumed in connection herewith and described herein, ad valorem taxes for the current and all subsequent years, zoning ordinances and utility district assessments, if any, applicable to and enforceable against the above-described property, and all valid easements, restrictions, mineral reservations and maintenance fund liens, if any, applicable to and enforceable against the above-described property as shown by the records of the county clerk of the county in which the real property is located.

But it is expressly agreed that the Grantor herein reserves and retains for himself, his heirs and assigns, a VENDOR'S LIEN, as well as the Superior Title, against the above-described property, premises and improvements, until the above-described Note and all interest thereon have been fully paid according to the terms thereof, when this Deed shall become absolute. TEXAS FINANCIAL CORPORATION, at the instance and request of the Grantee herein, having advanced and paid in cash to the Grantor herein that portion of the purchase price of the herein described property as is evidenced by the hereinbefore described note, the Vendor's Lien together with the Superior Title to said property, is retained herein for the benefit of said TEXAS FINANCIAL CORPORATION, and the same are hereby TRANSFERRED and ASSIGNED, to said TEXAS FINANCIAL CORPORATION, its successors and assigns.

WHEN this deed is executed by more than one person, or when the Grantee is more than one person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed correspondingly, and when executed by or to a corporation, or other entity other than a natural person, the words, "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns".

REAL PROPERTY RECORDS
TRAVIS COUNTY, TEXAS

12871    0411

EXECUTED this the 4TH day of FEBRUARY, 1997.

_____
JEF A. SCOTT

_____
LORI SCOTT

THE STATE OF TEXAS          §

COUNTY OF Williamson        §

    This instrument was acknowledged before me on the ___4___ day of ~~JANUARY~~ February, 1997 by JEF A. SCOTT AND LORI SCOTT.



EMMA PINKSTON
Notary Public, State of Texas
My Commission Expires
FEB. 23, 1998

_____
Notary Public, State of Texas
Name:_____
My Commission expires:_____

AFTER RECORDING RETURN TO:

T. DAVID YOUNG
10336 WEST DARLEEN DRIVE
LEANDER, TEXAS 78641

\texfin\young\loan-pkg

Texas National Title, inc
251 N. Bell Blvd., Ste. 106
P. O. Box 2159
Cedar Park, Texas 78613
(512) 331-9647

FILED

97 FEB 13 PM 3: 19

COUNTY CLERK
TRAVIS COUNTY, TEXAS

STATE OF TEXAS          COUNTY OF TRAVIS
I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me and was duly RECORDED in the Volume and Page of the named RECORDS of Travis County Texas on

FEB 13 1997

COUNTY CLERK
TRAVIS COUNTY, TEXAS

RECEIPT#: A00062377  TRANS#: 46432  DEPT: REGULAR RECORD  $11.00
CASHIER: BATHU  FILE DATE: 2/13/97  TRANS DATE: 2/13/97
PAID BY: CHECK# 31128

REAL PROPERTY RECORDS
TRAVIS COUNTY, TEXAS

12871  0412